UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:09-CV-315-H

**DAVID ALLEN WARD**                                                      **PLAINTIFF**

**V.**

**KENTUCKY STATE REFORMATORY** *et al.*                      **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on motions for summary judgment by all remaining Defendants. Plaintiff responded, and the motions are ripe for decision.[1] Upon review, for the reasons set forth below, the Court will grant the motions for summary judgment.

### I.

Plaintiff, David Allen Ward, is a prisoner incarcerated at the Kentucky State Reformatory (KSR). The action arises out of a May 1, 2008, incident where Plaintiff slipped and fell in the kitchen of KSR. Following an initial review of the complaint under 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), the Court allowed Plaintiff's individual-capacity claims against Larry Chandler and John Wright for deliberate indifference to Plaintiff's safety, individual-capacity claims against Dr. Lawrence Duvall, Dr. Kemen, and Dr. Haas alleging deliberate indifference to his serious medical needs, and state-law negligence claims against ARAMARK, Mark Geddes, Chandler, and Wright to proceed past

---

[1] The Court notes that there are several pending discovery motions filed by Plaintiff. The Court has reviewed these motions and finds the discovery requested by Plaintiff is not necessary for the resolution of the motions for summary judgment. Plaintiff's motions will therefore be denied as moot.

initial review.[2]  The Court subsequently allowed Plaintiff to proceed with a deliberate indifference claim against CorrectCare Integrated-Health, Inc. ("CorrectCare"), as well.

Plaintiff alleges that he was working as an inmate worker in the KSR kitchen on a food serving line on May 1, 2008.  He was attempting to restock a food item when he slipped on soup that had spilled on the floor and "fell and hit my head really hard and doing so, I severely injured my neck and upper back."  Plaintiff alleges that Chandler, formerly the Warden at KSR, and Wright, the Deputy Warden at KSR, "violate[d] the 8th Amendment by issue [sic] the state boots, they are very slick and hazardous and very unsafe to wear in the kitchen."

Plaintiff also alleges that the injuries to his neck and back were not properly treated.  Specifically, he alleges that various Defendants violated the Eighth Amendment by denying him "the proper medical care and diagnosis[,] testing[,] and x-ray and proper treatment I need . . . ."

Plaintiff was treated by KSR medical personnel immediately following his fall.  On May 7, 2008, Dr. Duvall examined Plaintiff and referred him for an x-ray and a CT scan.  Duvall noted that Plaintiff had fallen and hit the back of his head and was still experiencing headache, nausea, and neck tenderness and pain.  An x-ray was conducted, and the results were sent to Duvall on or about May 7-8, 2008.  The radiologist reported that Plaintiff had mild degenerative changes of the cervical spine and advised a clinical follow-up or CT.  Duvall had already requested the CT for Plaintiff, and CorrectCare subsequently approved the request.  On May 27, 2008, Plaintiff received a CT at Baptist Hospital Northeast.  The report from the CT examination

---

[2]The Court also allowed Plaintiff's state-law negligence claim against Michelle McMillan to proceed.  However, the claim against McMillan was dismissed by Order entered January 6, 2011 (DN 119).

found "no evidence of acute or chronic intracranial hemorrhage, mass, mass effect, cerebral edema, hydrocephalus, skull fracture or additional abnormality."

On June 16, 2008, Plaintiff was referred to physical therapy, and he received approximately six sessions of physical therapy in June, July, and August of 2008. On August 12, 2008, CorrectCare denied an MRI of Plaintiff's neck and spine because it did not meet medical appropriateness. On September 24, 2008, CorrectCare approved a nerve conduction study at Baptist Hospital East. The study was conducted on October 2, 2008, and found no evidence of cervical radiculopathy. The medical records indicate that Plaintiff's pain was under control as long as he took the pain medication prescribed by his medical providers.

Plaintiff filed a grievance on January 21, 2009, stating that he disagreed with the decision denying an MRI of his neck. Plaintiff argued in his grievance that he was in pain and felt he really needed an MRI. The Health Care Grievance Committee reviewed Plaintiff's grievance and found that his care had been appropriate and that further diagnostic testing was not medically necessary according to nationally accepted guidelines.

Dr. Kemen's only experience with or exposure to Plaintiff was with respect to Plaintiff's grievances filed with the Kentucky Department of Corrections (KDOC) and letters from Plaintiff complaining about his medical treatment. In a letter to Kemen, dated February 4, 2010, after this lawsuit was filed, Plaintiff complains that he wants to receive Ensure, that he wants to be "put in the computer as medical" to avoid being transferred to another prison, and that he wants to receive the medical care he thinks he needs with respect to his stomach, back, neck, upper back, knee problems, and all his other medical problems. Many of Plaintiff's grievances and complaints are unrelated to the claims in this action.

Haas had no direct care contact with Plaintiff at any time following Plaintiff's slip and fall. Dr. Haas, as Medical Director for KDOC, was only responsible for the oversight and administration of clinical services provided to inmates housed in KDOC facilities. He did not treat any inmates, including Plaintiff, as a primary care provider and was not routinely aware of the medical records or conditions of the inmates. In fact, Haas was not aware of Plaintiff's complaints until after this action was filed.

Plaintiff also alleges state-law negligence claims against ARAMARK, Geddes, Chandler, and Wright arising out of the slip and fall.

## II.

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* If the nonmoving party will bear the burden at trial on a dispositive issue, the nonmoving party must go beyond the pleadings and by his own affidavits, "or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing

4

that there is a genuine issue for trial." *Id*. at 324 (internal quotation marks omitted, citing Fed. R. Civ. P. 56(e)). If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990). The moving party, therefore, is "entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id*. (internal quotation marks omitted).

**III.**

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). To rise to the level of an Eighth Amendment violation, "a prison official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837-38. Therefore, to prove a prison official is liable under the Eighth Amendment for denial of medical treatment, the prisoner must first demonstrate the existence of a "sufficiently serious" medical need. *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir.

5

2005). The prisoner must also demonstrate that the prison official subjectively possessed "'a sufficiently culpable state of mind in denying medical care.'" *Id.* (quoting *Farmer*, 511 U.S. at 834). "'Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference.'" *Id.* (quoting *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)).

Thus, the standard for deliberate indifference includes subjective and objective components. *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001). "[T]he subjective intentions of prison authorities must be demonstrated by objective manifestations of such intent, and cannot be proved by factually unsupported, conclusory opinions of the court or of the prisoners or of their representatives." *United States v. Michigan*, 940 F.2d 143, 154 n.7 (6th Cir. 1991). The objective component of an Eighth Amendment deliberate indifference claim is governed by "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 9 (citations omitted). Prisoners are not entitled to "unqualified access to health care." *Id.*

Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

> We distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.

6

*Id.* (citations omitted). In *Estelle v. Gamble*, 429 U.S. 97 (1976), the plaintiff complained that he had not received appropriate treatment for back problems. The Supreme Court stated: "But the question whether an X-ray -- or additional diagnostic techniques or forms of treatment -- is indicated is a classic example of a matter for medical judgment. A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment." *Id*. at 107. Mere disagreement over medical treatment cannot give rise to a constitutional claim of deliberate indifference. *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir. 1996).

Here, Plaintiff received medical treatment from KSR medical personnel immediately following the incident. He continued to receive medical care over the following months, including x-rays, physical therapy, a CT scan, and a nerve conduction study. The medical records demonstrate that Plaintiff was prescribed pain medication and received many follow-up visits with respect to his neck and back pain, along with his other medical complaints. Plaintiff does not dispute that he received medical care. Plaintiff has a disagreement with respect to his medical care. Such mere disagreement cannot give rise to a constitutional claim.

In response to the motions for summary judgment, Plaintiff complains that Defendants did not produce all of Plaintiff's medicine logs. Defendants argue that they produced all of Plaintiff's medicine logs related to treatment for injuries as a result of the slip and fall and they need not produce medicine logs related to Plaintiff's other ailments. Even if Defendants produced the medicine logs as requested Plaintiff, summary judgment would still be appropriate as there is no dispute that Plaintiff received treatment for his injuries and that he merely disagrees with the medical treatment he received. *See Estelle*, 429 U.S. at 107.

Furthermore, Dr. Kemen had no direct role in Plaintiff's medical care. His only involvement with Plaintiff was in handling his medical grievances. A plaintiff cannot maintain a claim against a prison official based solely on his or her denial of a grievance. "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).

Likewise, Dr. Haas, the Medical Director for KDOC, had no direct participation in Plaintiff's medical care. To the extent Plaintiff bases his claim against Haas on his supervisory role, "*respondeat superior*[3] is not a proper basis for liability under § 1983." *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006). "Nor can the liability of supervisors be based solely on the right to control employees, or simple awareness of employees' misconduct." *Id.* (internal quotations omitted). "In order for supervisory liability to attach, a plaintiff must prove that the official 'did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on.'" *Loy v. Sexton*, 132 F. App'x 624, 626 (6th Cir. 2005) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). Plaintiff has provided no such evidence against Haas.

Therefore, Plaintiff fails to present evidence of a disputed material fact as to his § 1983 deliberate indifference claims against Drs. Duvall, Kemen, and Haas in their individual capacities and CorrectCare, and summary judgment will be entered in favor of these Defendants.

---

[3]*Respondeat superior* is "the doctrine under which liability is imposed upon an employer for the acts of his employees committed in the course and scope of their employment." BALLENTINE'S LAW DICTIONARY (3d ed. 1969).

**IV.**

Plaintiff also alleges that Defendants Larry Chandler and John Wright violated the Eighth Amendment by issuing state boots that are "very slick and hazardous and very unsafe to wear in the kitchen."

As a general principle, a prison official has the duty to ensure the "reasonable safety" of inmates. *See Farmer*, 511 U.S. at 844. A prison official is liable for failing to protect when a plaintiff proves the following: "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. In other words, a prison official must act with deliberate indifference. *See Roland v. Johnson*, 856 F.2d 764, 769 (6th Cir. 1988). A defendant acts with deliberate indifference when "he causes unnecessary and wanton infliction of pain . . . by deliberately disregarding a serious threat to [the inmate's] safety after actually becoming aware of that threat." *Walker v. Norris*, 917 F.2d 1449, 1454 (6th Cir. 1990) (quoting lower court's deliberate indifference jury instruction with approval).

Federal courts routinely have held that slippery prison floors do not pose a "substantial risk of serious harm" to give rise to an Eighth Amendment violation. *See e.g., Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004) (holding that "slippery floors constitute a daily risk faced by members of the public at large" and do not amount to cruel and unusual punishment); *Bell v. Ward*, 88 F. App'x 125, 127 (7th Cir. 2004) (negligence or gross negligence in failing to address accumulation of water on prison floor did not rise to deliberate indifference); *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) (noting that slippery prison

floors do not state a claim for cruel and unusual punishment); *Graham v. Poole*, 476 F. Supp. 2d 257, 260 (W.D.N.Y. 2007) (allegation that prison officials failed to provide non-slip mats in shower alleges mere negligence, not deliberate indifference).

Even if the slippery kitchen floor could give rise to a "substantial risk of serious harm" under the Eighth Amendment, Plaintiff must still establish that Chandler and Wright were aware of the risk. Plaintiff has failed to make specific factual allegations as such, other than his blanket allegation that they issued the boots knowing they were hazardous. Plaintiff fails to allege facts to support when, how, and by whom they were made aware of such risks. "A claimed constitutional violation must be based upon active unconstitutional behavior." *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The actions of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Id.; Summer v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Plaintiff has produced no evidence that he notified Chandler or Wright of his allegation that the boots were unsafe or hazardous in any way. To the extent that Plaintiff requested a list of how many inmates fell in the KSR kitchen, and that such a list would show knowledge on the part of Chandler or Wright, Defendants have stated that they do not possess any records of how many inmate workers may have fallen in the kitchen. Therefore, Plaintiff fails to establish that either Defendant had the requisite subjective knowledge of the risk to maintain an Eighth Amendment claim against them.

Accordingly, Chandler and Wright are entitled to summary judgment on Plaintiff's individual-capacity, deliberate indifference claims.

**V.**

The remaining claims are state-law negligence claims against ARAMARK, Geddes, Wright, and Chandler. "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Having dismissed all federal claims over which the Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims. 28 U.S.C. § 1367(c)(3); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Consequently, Plaintiff's state-law claims against ARAMARK, Geddes, Chandler, and Wright will be dismissed without prejudice.

**VI.**

For the reasons set forth above, Defendants' motions for summary judgment (DNs 130, 131, and 132) are **GRANTED.** By separate Order, the Court will direct the Clerk to enter summary judgment in favor of Defendants.

All remaining pending motions are **DENIED as moot.**

Date:

cc:    Plaintiff, *pro se*
        Counsel of record
4412.010